The following is the PDF of an official transcript. Official transcripts may only be filed in CM/ECF by the Official Court Reporter and will be restricted in CM/ECF for a period of 90 days. You may cite to a portion of the attached transcript by the docket entry number, referencing page and line number, only after the Court Reporter has filed the official transcript; however, you are prohibited from attaching a full or partial transcript to any document filed with the Court.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
 2                     ATLANTA DIVISION

 3   SWEETWATER BREWING COMPANY,     :
     LLC, FREDRICK BENSCH, TILRAY,   :
 4   INC., AND APHRIA, INC.,         :
                                     :
 5           PLAINTIFFS,             :
                                     :
 6   vs.                            : DOCKET NUMBER
                                     : 1:22-CV-0024-AT
 7   RAY SCOTT FUSS,                 :
                                     :
 8           DEFENDANT.              :

 9                                  AND

10   RAY SCOTT FUSS                  :
                                     :
11           PLAINTIFF,              :
                                     :
12   vs.                            : DOCKET NUMBER
                                     : 1:22-CV-0064-AT
13                                   :
     FREDERICK M. BENSCH, AKA        :
14   FREDDY BENSCH, ET AL.,          :
                                     :
15           DEFENDANTS              :

16

17        TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS
              BEFORE THE HONORABLE AMY TOTENBERG
18            UNITED STATES DISTRICT SENIOR JUDGE
                     JANUARY 14, 2022
19                     10:31 A.M.

20    MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED

21                 TRANSCRIPT PRODUCED BY:

22

     OFFICIAL COURT REPORTER:       SHANNON R. WELCH, RMR, CRR
23                                  2394 UNITED STATES COURTHOUSE
                                    75 TED TURNER DRIVE, SOUTHWEST
24                                  ATLANTA, GEORGIA  30303
                                    (404) 215-1383
25
```

```
1              A P P E A R A N C E S   O F   C O U N S E L

2

3    FOR THE PLAINTIFFS IN CASE NO. 1:22-CV-0024-AT AND FOR THE
     DEFENDANTS IN CASE NO. 1:22-CV-0064-AT:

4

5         AMANDA HYLAND
          BRENT M. RADCLIFF
6         TODD EDWARD JONES
          TAYLOR ENGLISH DUMA, LLP

7

8    FOR THE DEFENDANT IN CASE NO. 1:22-CV-0024-AT AND FOR THE
     PLAINTIFF IN CASE NO. 1:22-CV-0064-AT

9

10        BLAINE A. NORRIS
          JOHN ROBERT AUTRY
11        BLAINE A. NORRIS, PC

12        GREGORY SCOTT SMITH
          SMITH FROHWEIN TEMPEL GREENLEE BLAHA LLC
13
          MATTHEW HOOTS
14        SMITH TEMPEL

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; January 14, 2022.)**

THE COURT:  Do you want to call the case and also just poll the counsel to see who is here for the record?

COURTROOM DEPUTY CLERK:  Yes, ma'am.  We're here for the telephone conference in SweetWater Brewing v. Fuss, 22-CV-24 and Fuss v. Bensch, 22-CV-64.

For plaintiff in the SweetWater case and defendant in the Fuss case, we have Amanda Hyland, Brent Radcliff, and Todd Jones.

And for plaintiff in the Fuss v. Bensch case, we have Mr. Norris, Mr. Smith, Mr. Autry, and Mr. Hoots on the line.

THE COURT:  Very good.  Thank you.

Well, the real purpose of the phone call was to discuss my concerns about having litigation in these cases proceed separately rather than in -- rather than basically assembling them together.

And I didn't see that there were -- I mean, I realize we have got some different parties here.  But it seemed to me that it was -- they were very much related cases and would be more efficient to consider them together.  But if you don't think that, that's really what I wanted to get at.

I know that there is a motion to dismiss pending in the removed case, Fuss v. Bensch.  That was -- that motion was filed on the 13th of January.  And, of course, then there is no

1    answer yet.

2          But I wanted to hear from the parties about that.

3    And, of course, I could be wrong.  And I'm just getting to know

4    the case but -- both cases.

5          But perhaps counsel for Fuss, first of all, could

6    respond.

7          MR. NORRIS:  Thank you.  And good morning, Your Honor

8    and opposing counsel.  This is Blaine Norris representing

9    Mr. Fuss.  And I would be happy to respond.

10          At a conceptual level, we would oppose consolidating.

11   But it primarily relates to issues that will be addressed in

12   our response in our motion for remand.

13          Just so the Court is aware, in the state court

14   pleading, we have intentionally sought relief against

15   Mr. Bensch and the sellers involved in a fairly complicated

16   transaction with Aphria and Tilray back in November and

17   December of 2020.  But it is not that we just wholesale sued

18   everyone related to the transaction.  We have been intentional

19   in focusing on the conduct of Mr. Bensch.

20          So we will intend to put that position before Your

21   Honor in our motion to remand.  And that is why we don't really

22   believe that the issues are the same or that they should be

23   consolidated.

24          Now, at the same time, after the motion to remand is

25   ruled on, we would probably -- depending on the ruling, that

1  could affect our view of whether consolidation would be

2  appropriate at that time.

3          So that is the short version for now, Your Honor.

4          THE COURT:  All right.  And when are you planning to

5  file a motion for remand?  I mean, there is a time limit

6  obviously.  But is that imminently or --

7          MR. NORRIS:  Well, we are planning to file it -- we

8  know the deadline is -- we believe the deadline is 30 days

9  after removal, which would be February 7.  And that is only

10 about three weeks away.

11         I mean, we might be able to do it a week earlier.

12 But with everything going on, we might need that time.

13         THE COURT:  Yeah.

14         MR. NORRIS:  I note, Your Honor, that based on the

15 motion to dismiss that was filed yesterday, I think it is a

16 21-day response.  So oddly we feel like that is a little

17 premature because our response to the motion to dismiss would

18 be due February 3rd and our motion to remand is not due until

19 February 7th.  And it seems a little premature to be putting

20 the Court on a -- on us having to respond to the motion to

21 dismiss before we have addressed the jurisdictional concerns on

22 the motion to remand.

23         THE COURT:  Well, we can adjust that.  But -- because

24 I do agree with you that that may make more sense to -- if you

25 are going to raise issues with jurisdiction, that would have to

1    be dealt with first.  But --

2              MR. NORRIS:  And our focus -- I'm sorry, Your Honor.

3              THE COURT:  Go ahead.

4              MR. NORRIS:  Our focus on the motion to remand -- we

5    have given it quite some thought.  And the main gist will be a

6    discussion and focus on the equivalency prong of the two-prong

7    analysis.  We might want to reserve our question as to whether

8    complete preemption is appropriate under the copyright act.

9              But I would suspect the share of our response will be

10   probably fairly limited on that first issue about complete

11   preemption.

12             We will concede the subject matter on the first

13   prong, and it will be a focus on equivalency and whether the

14   proper remedies under 106, if there is any remedy in our state

15   law claim, are substantially similar rights under 106.

16             So just to let the Court know, we're not kicking the

17   can down the road.  We have spent a good bit of time thinking

18   about it.  And that will be where the focus of the issue is.

19             THE COURT:  Would the defendants like to respond to

20   that?

21             MS. HYLAND:  Good morning, Your Honor.  This is

22   Amanda Hyland for defendants.

23             I don't disagree on the procedure issues that we have

24   discussed so far on this call.  I do think that consolidation

25   would be appropriate if both cases ultimately proceed.  But I

1   think we have got to resolve subject matter jurisdiction first.

2   And I agree with Mr. Norris that the Court will need to deal

3   with that before we get to other issues.

4           So we certainly believe consolidation is appropriate

5   and that these two cases involve very similar sets of evidence

6   and witnesses and ultimate legal issues and it would be

7   appropriate.  But we would need to resolve jurisdiction first.

8           THE COURT:  Okay.  Well, there is -- besides this

9   case, there is a lot going on obviously distracting as usual on

10  the pandemic at the moment and so many people -- I don't need

11  to go into everyone's health situation.  But I know anything

12  can happen.

13          So I would not contract a 30-day period.  So it

14  really is more a question of making sure you have the time

15  necessary to both respond to that.

16          And then the notion of the parties then is I should

17  rule on that and then at that juncture it would be helpful to

18  have -- if I rule adversely to Mr. Fuss -- if I were to, then

19  start the time clicking on the motion to dismiss or is it that

20  you are thinking that it should be resolved -- a response

21  should be filed before then?

22          That is what I wasn't clear about what your positions

23  were.  And I would direct that to counsel for Mr. Fuss first.

24          MR. NORRIS:  Thank you, Your Honor.  Blaine Norris.

25  I think you were directing that to me.

1          Yes.  We would appreciate allowing the time to

2     respond to the motion to dismiss to not start until Your Honor

3     rules on the jurisdictional issue.

4          And I would also say for a practical reason why that

5     would be good is if Your Honor determines that complete

6     preemption is appropriate and that there is preemption of one

7     or more of the claims then we -- if there is merit to this

8     motion to dismiss -- and we can debate that later -- then there

9     might need to be in response to your ruling an amendment of the

10    pleadings to reflect the realities of what the Court ruled.

11         Specifically if Your Honor's preemption under

12    copyright infringement sort of forces us down that road, then

13    we would be amending the complaint anyway.  We wouldn't just be

14    traversing on -- I mean, subject to our right to appeal and

15    trying to preserve the position.

16         But conditionally and alternatively, we would need to

17    amend the complaint anyway.  And so that is what I would ask

18    for, respectfully.  But I think once we get that ruling, our

19    view on consolidation and amendment to the pleadings -- we're

20    going to be making some decisions pretty quickly after that.

21    We're not going to drag that out.  We have no intention to drag

22    that out.

23         THE COURT:  All right.  And do the defendants want --

24    counsel want to say anything about that?

25         MS. HYLAND:  It is a little confusing, Your Honor.

1   Yes.  I think we're fine with that approach.  I agree that if

2   there is a possibility we would be dealing with an amended

3   complaint there is little reason to be briefing motions to

4   dismiss on a defunct complaint.  So we fully agree with

5   Mr. Norris on that.

6              THE COURT:  Okay.  All right.  Is there anything that

7   you want to address -- then let's move on to the case filed by

8   SweetWater.

9              Does it make sense for that to be -- for us

10  basically -- how do you want in terms of the timing relative to

11  these two cases for that to proceed then?

12             In light of that we're all on the same page as to the

13  Fuss case at least as procedurally of how we're going to move

14  forward, what does SweetWater's counsel think as to how that

15  impacts, if at all, a schedule for the SweetWater case?

16             MS. HYLAND:  Your Honor, I don't think it does impact

17  it at this time.  We would like to see the declaratory judgment

18  action move forward on a regular schedule at this point.  And

19  we can address consolidation down the road if that becomes

20  ripe.

21             But, you know, I don't see any reason to have that

22  case stayed or in any way hindered pending what appears to be

23  potentially, you know, a month-long process of resolving

24  jurisdiction and amended complaints in the removed case.

25             THE COURT:  And what do the defendants' counsel say

1    in this regard?

2          MR. NORRIS:  I -- the concern we have is we have

3    intentionally chosen to focus on the seller's side of the

4    analysis of this deal.  And that is all going to be tied into

5    the removal action.

6          And based on the Court's rulings, if those are deemed

7    not preemptive, then we will have a fairly significant and

8    different response in the dec. action.  Because I don't want to

9    argue the merits, but just so you know:  If we got relief on

10   the state action, the remedies we would be seeking would be --

11   would significantly affect the positions of Aphira, Tilray, and

12   the other claimants.  And there are other issues on that.

13         So I'm not saying it needs to be stayed while we

14   resolve it.  I note that our answer -- we filed an

15   acknowledgment of service.  We signed an acknowledgment.  So I

16   believe we have 60 days to respond, which I would think would

17   include our motions to dismiss the dec. action.  So that puts

18   us at March 4.

19         So it is already a little bit staggered.  But jumping

20   through all the hoops both for disclosures and Rule 26(f)

21   conferences -- because the claims, if preemption is determined

22   and infringement is going forward and consolidation is

23   appropriate, subject to our arguments that that is not

24   appropriate -- but we would probably amend the pleadings and be

25   bringing -- you know, be forced to make arguments that right

1   now we're not trying to make and we don't want to make.

2           And we believe the state court relief are the limited

3   relief on the seller's side.  All of the people in the dec.

4   action, those folks are on the buyer's side.  And we have

5   intentionally pursued them.

6           So we would -- from a judicial efficiency standpoint,

7   we certainly recognize --

8                    **(Audio interference)**

9           THE COURT:  I missed something.  You certainly

10  recognize what?

11          MR. NORRIS:  We certainly recognize there are similar

12  operative facts.  We certainly appreciate that the documents

13  and witnesses -- that there will be overlap.  So that -- based

14  on the ruling on preemption, it will mitigate in favor of

15  consolidation if we lose our argument that they are not

16  preemptive.

17          We feel strongly that they are not to be preemptive.

18  But if we do not prevail on that, we would presume it would be

19  consolidated and that we would not be in a position of delay.

20          So we wouldn't ask for a generic stay of that action.

21  But it might be helpful in the interest of efficiency to at

22  least stay it until we get the ruling on the removal so that

23  we're not just doing a bunch of make-work on the dec. action.

24          THE COURT:  Okay.

25          MR. NORRIS:  Because obviously -- one last thing.

1   Obviously my perspective is in the dec. action, if forced to

2   make infringement claims, I think those would be compulsory

3   counterclaims in the dec. action.  We're trying to avoid

4   pursuing Aphira and Tilray and the buyer's side of the

5   transaction.  We are intentionally focusing on the gravamen of

6   what we believe is the wrongdoing of Bensch and the sellers

7   with Bensch at the helm.

8          We say that just to say we don't want to be forced

9   into a position of bringing compulsory counterclaims when we're

10  focusing on the state claims.  But if forced to, we will.  And

11  that would probably be in the posture of a consolidated action

12  with compulsory counterclaims on an amended complaint.

13         THE COURT:  All right.  And does SweetWater plaintiff

14  have anything else you want to say in response to that?

15         MS. HYLAND:  Your Honor, it is complicated.  And we

16  obviously have a lot of moving parts here.

17         You know, I think, you know, some of what Mr. Norris

18  has said underscores the need for the declaratory judgment

19  action and why it has been filed in that the claims that

20  Mr. Fuss brought in the state court action do very much

21  materially impact the rights of SweetWater Brewing Company and

22  its parent companies to continue using the largest brand asset

23  of this brewery.

24         And, you know, my clients obviously want to bring

25  this to resolution and to get out from under this cloud of

1  really significant threats to their intellectual property.

2  And -- you know, so we certainly would like to see the

3  declaratory judgment action, you know, at least move forward at

4  this point.

5          You know, they have got two months right now to

6  answer or move to dismiss or whatever they choose to do.  And,

7  you know, I don't see any reason why that should be impacted by

8  the removal issues of the other case at this point.  It seems

9  as though we could certainly try to align the cases on a

10 similar schedule down the road, you know, if all of these

11 things happen to make that appropriate.  But if they don't

12 happen, then all we have done is delay this case based on

13 hypothetical concerns.

14         MR. NORRIS:  If I may, Your Honor.

15         THE COURT:  Yes.  Go ahead.

16         MR. NORRIS:  I respect what Ms. Hyland is saying.

17 But my concern is really practical in nature.  First, I agree

18 that Mr. Bensch's response -- he is a defendant in the state

19 action and on the removal action.  And whatever defenses he is

20 allowed to bring would certainly in a significant way have some

21 type of issue preclusion, res judicata-type effect.  And if we

22 remedy the issue, it probably will wholesale remedy the

23 concerns of Aphria and Tilray.

24         There are a few permutations where that might not be

25 true.  But they are so attenuated that the real matter is

1   Bensch's claims.  And he can certainly file those as

2   crossclaims -- I mean, counterclaims for declaratory judgment

3   in the removal action.  Just him.

4            Now, the reason it is specifically a concern is

5   really we believe that -- along with other arguments, we

6   believe that there are going to be statute of limitations and

7   procedural issues that are going to get wrapped up in why we

8   don't believe that Aphria and Tilray can piggyback ownership

9   claims.

10           And that gets into the weeds a little bit, Your

11  Honor.  But it goes back to some old documents in '02.  We

12  don't believe they are going to be allowed to argue ownership.

13  So if we are forced to go forward on the dec. action as though,

14  well, we just want to get this thing moving, I don't believe it

15  is going to be any quick resolution for Aphria and Tilray.  And

16  we're not trying to slow down that resolution.

17           It is true we sent cease and desists.  But we have

18  made it abundantly clear months later when we filed our state

19  action that we want to focus on Bensch and the sellers.

20           Now, whether and to what extent that puts a cloud on

21  Aphria and Tilray, I respect that.  But we feel like all that

22  relief can be handled in the removal action instead of forcing

23  us to file claims we do not wish to file just because of the

24  procedural rules of compulsory counterclaims.

25           And there will -- you know, so it will get down to

1   questions of ownership.  And those will -- those will end up

2   creating -- it is not like the dec. action is going to just

3   lead to a real quick resolution.  It is going to be conditioned

4   on the same factual discovery inherent in the removal action.

5           So while it sounds good to say, hey, we have no

6   reason to slow up the dec. action and, you know, we can keep

7   that going, we might consolidate later, in the actual facts and

8   how it will play out, I assure you it will get muddy really

9   quickly.  And we're not going to get any more resolution.

10          We want to focus on Bensch and the sellers.  And they

11  are forcing us -- and it is not going to get closure.  It is

12  just going to muddy the water.

13          So I would ask for the indulgence of the Court and

14  opposing counsel to just delay it slightly so that we can get a

15  ruling on the removal.  And this matter will be extremely

16  cleaned up based on how the Court rules on the removal.

17          THE COURT:  So what you're asking is to have a --

18  basically not to have to file your answer in the SweetWater

19  matter until I have ruled on the -- on the so-called removal

20  matter?

21          MR. NORRIS:  That is what I'm asking.  And we would

22  hope that we can expedite everything on the removal matter.  We

23  have no intent to delay.  We won't be asking for continuances,

24  assuming COVID doesn't get in the way.  We are not going to be

25  coming back asking for more and more time.

1          We want to move the removal action as well.  We want

2     to address that.  And once we address it in a meaningful way, I

3     believe the parties will be able to adjust the pleadings and

4     the consolidation issues accordingly based on the Court's

5     ruling.  So --

6          THE COURT:  So your motion for removal basically for

7     remand is going to be due when?  It is 30 days from -- when did

8     you file it?

9          MR. NORRIS:  The motion for remand is 2/7/22

10    according to our calculation.

11         THE COURT:  So that is going to end up being -- I

12    mean, it is a short month obviously -- fully briefed by early,

13    mid-March; right?

14         MR. NORRIS:  Yes, Your Honor.  And we're amenable to

15    an expedited briefing schedule on the removal.  I appreciate

16    what the opposing counsel did in their removal.  I actually

17    found it -- their notice was very much in the nature of a

18    brief, which I found very helpful.

19         It is almost like our motion to remand will really be

20    a response brief.  And, of course, they will want to reply.

21    But I would not really expect -- it is not really our motion to

22    remand and then -- of course, they get the right to answer.

23    But their answer to our motion to remand will almost be -- our

24    motion to remand is almost going to be a response to their

25    notice of removal and their answer to our motion is almost

1    going to be a reply brief.

2         So I really do feel like we could have an expedited

3    briefing schedule on the removal issues.

4         THE COURT:  Well, let me just tell you some other

5    realities that are at play here is that we have deadlines for

6    issuing orders internal that are set basically via Congress'

7    wisdom for making sure we move cases so that we have a March --

8    the end of March a deadline for everything that has been

9    pending six months, which the motions that have been pending

10   six months and that sort of is a very voluminous demand

11   essentially.

12        So there are -- you don't need to know all the

13   intricacies and how one decides something has been pending six

14   months because it is basically though things that have been

15   pending since before September six months.  So it is sort of --

16   it is complicated.

17        But, anyway, the point is that it seems we have such

18   a volume of work that it is not likely that we would reach this

19   before the beginning of April.  So, you know, the fact that you

20   are still briefing it in March doesn't make any difference.  I

21   guess you could expedite it five or ten days earlier.

22        But unless there was some enormous tragedy about to

23   happen that I had to have an injunction hearing on, that is the

24   only sort of thing that would cause me simply to stop in my

25   tracks to deal with this.

```
 1              So it might make better sense from what I'm hearing
 2   and even the tone of the conversation -- it might make better
 3   sense for you-all to wait until -- I mean, I kind of agree with
 4   Mr. Fuss.  It may make it easier because -- particularly in the
 5   nature -- because if he is going to respond and file an answer
 6   and may end up having to file mandatory counterclaims, it is
 7   very messy if I haven't resolved the first action.
 8              So is there a reason why I shouldn't just defer and
 9   try to say I'm going to get you an order sometime in April on
10   the -- on the motion for remand?
11              MR. NORRIS:  The plaintiff -- Mr. Fuss has no concern
12   with that.  And that -- that would --
13              THE COURT:  Well, that is what you have asked for.
14              But I guess the question is:  What about the
15   SweetWater plaintiff?
16              MS. HYLAND:  Your Honor, I think that if the remand
17   motion is ruled on relatively quickly -- I do appreciate that,
18   you know, you've got a lot of other matters to consider and am
19   very grateful that you would, you know, look at issuing a
20   ruling in April.
21              If all of this is going to get resolved that quickly,
22   then I have fewer concerns about staying a response to the dec.
23   action complaint.
24              I think the parade of horribles in my head is that we
25   are six months in and don't have an order on the remand and the
```

1   dec. action is just sitting for months because the answer isn't

2   due until that order is entered.

3           So if we're all on a relatively faster schedule on

4   the removal action, then that would definitely absolve, you

5   know, my worry on that issue.

6           THE COURT:  Well, let me talk to my law clerk for a

7   second.  I'm going to get off this phone and call him to make

8   sure that I haven't completely overpromised.

9           Okay?

10          So let me just talk with him for a moment.  And I'll

11  get back on.  All right?

12          Hold on.  But you-all stay on, and I'll come back on.

13          All right?

14          MS. HYLAND:  Thank you, Your Honor.

15          **(A brief break was taken at 10:59 A.M.)**

16          THE COURT:  Okay.  We're back.

17          All right.  So we were going over or I was going over

18  with my law clerk here what is exactly on our plate for the

19  beginning of April.

20          So I think what we can realistically represent to you

21  is that -- that we will attempt to get something out to you by

22  the 13th of May, which is -- and, you know, obviously we're

23  going to do as well as we can.  But I can't completely tell you

24  it is going to be the 13th and not the 16th or something like

25  that.  But we will be shooting for mid-May to get it done.  And

1    I think that really accomplishes the objectives you have in

2    mind, and then you can keep a normal schedule for briefing.

3            We won't do anything expedited on the actual briefing

4    schedule for the motion for remand because it won't be

5    necessary.  Everything will be there when we are ready to move

6    on it.

7            And then we'll stay the declaratory judgment action

8    pending resolution of the -- the motion for remand.  And we'll

9    have a phone conference -- I think that would be useful to have

10   a phone conference after I have issued a ruling when you've had

11   a few days to sort of assess the situation and talk to your

12   clients.

13           Is there -- one thing I wanted to just raise with

14   Mr. Fuss' counsel is:  What happens if some of the -- your --

15   the possibility that some of your claims might be subject to

16   remand but others not?

17           MR. NORRIS:  Well, we are considering the possibility

18   of whether we would ask the Court to exercise the discretion to

19   remand and not exercise supplemental jurisdiction.  We

20   certainly are aware that if complete preemption is appropriate

21   that you could keep it all up.  But we haven't made that

22   decision.

23           I would tend to think if you deem some preempted at

24   this juncture, given Aphria and Tilray are forcing the hand on

25   the dec. action, I think the response would most likely be an

1    amended complaint subject to our right to appeal.  And I would

2    have to look at how that would be done.  But subject to our

3    right to appeal at the final conclusion of the case, we would

4    amend to add the express claims based on the ruling or we would

5    ask for a petition for interlocutory appeal.  But I really

6    think we would probably, if forced to -- if forced to, over

7    objection -- and no disrespect to the Court, of course.

8           But if forced to, we would probably amend to bring

9    express claims, consolidate the actions, and just take our

10   chances on addressing them down the road.

11          If that is what Your Honor was asking.  I think I

12   understood the question right.

13          THE COURT:  You know, I'm just -- frankly, analyzing

14   the suit in this way, I just am -- just basically it is -- it

15   is not unusual.  That is all.  And there were, I think, a

16   number of claims in your case.  There would be some that might

17   arguably be subject to basically the copyright statute and

18   therefore be subject to removal and then others might not be.

19          So I mean, I'm just -- I'm just basically speaking

20   theoretically.  So I'm just trying to figure out what would

21   you -- I mean, it is not desirable, of course, to be litigating

22   in two different forums.

23          Anyway, I don't need a definitive -- I think it is

24   something you should think about -- that is all -- while you

25   are -- while you are briefing it.  In terms of -- if there

1    is -- after you have reviewed the position of the -- of

2    SweetWater -- and SweetWater ought to be thinking about it

3    also, what you are -- what are the alternatives that you are

4    asking the Court to consider under these circumstances.

5            MR. NORRIS:  And, Your Honor, if I may on that one

6    small point, I haven't looked closely at in state court you can

7    amend your complaint without leave of court any time up to the

8    pretrial.  I know federal court is you cannot.  After an answer

9    is filed or maybe a motion to dismiss, you have to have leave

10   of court.

11           I just want to -- and we're addressing the issue

12   already.  Clearly based on the Court's ruling on the notice of

13   removal, we would love to have two or three days -- I just am

14   throwing it out there so it doesn't -- it is something that you

15   don't say, well, why didn't we mention that in the first call?

16   We would want two, three, four days to have leave to amend to

17   address the Court's ruling.  That is really what we're getting

18   at.  I think you --

19           THE COURT:  Right.  That is not a problem.  And, you

20   know, I think the thing about it is it would be better -- it

21   would be better to have a very good amendment than to have one

22   that is messy.  So, you know, it might be better to say you

23   have to amend within ten days and get a quality --

24           MR. NORRIS:  Yes, that would be perfect.

25           THE COURT:  -- complaint.  So if that is what you are

1    saying when you amend your complaint.

2             MR. NORRIS:  Yes.  Thank you, Your Honor.  That is

3    what we'll be asking for.

4             THE COURT:  Okay.  Well, I would rather have a

5    quality one that basically a ragtag one.

6             MR. NORRIS:  Yes.

7             THE COURT:  Okay.  Well, we'll enter an order to that

8    effect.

9             And I want to just highlight one other sort of moving

10   part in this is, you know, we have two judicial nominees who I

11   anticipate will be confirmed by March.  And so it is always

12   possible I could lose this case because it is -- you simply

13   filed -- it is basically a crapshoot what happens in the whole

14   process.

15            If I do, I think this is very good because I think it

16   also will provide a structure for whoever gets it.  And I will

17   go over the -- I would go over it with them.  I have a good

18   relationship with both lawyers who have been nominated.

19            But it is conceivable, of course, that they are going

20   to say I need a little bit more time.  But I have no idea what

21   will happen.  It is just more likely than not it will stay with

22   me.  But it is always possible.

23            So I just wanted to flag that for you and tell you

24   that a case like this that has an imminent set of deadlines,

25   which is still manageable, I will go over with whoever -- if it

1    was reassigned with whoever gets it.  So don't panic.

2         MR. NORRIS:  Yes, Your Honor.  Thank you.

3         THE COURT:  Okay.

4         MR. NORRIS:  If the Court is nearing the end, I have

5    one small matter if I may be heard.

6         THE COURT:  Okay.  Go ahead.  Sure.

7         MR. NORRIS:  There is one small letter -- we need a

8    letter.  It is an important letter.  It is jurisdictional in

9    nature.  And I have asked for it.  And I have told opposing

10   counsel that I was going to broach this issue on this phone

11   call.  So I'm not surprising opposing counsel with this

12   request.

13        But the case comes down in large part, there is a --

14   there is this agreement from November/December of 2020, which

15   is the merger document, which is attached to the complaint.

16   And the key document related to Article III is the disclosure

17   letter where they disclose all the IP.

18        And we have asked for it for over a year

19   pre-litigation.  We have renewed our request.  I know that

20   we're not in the posture of doing full-blown discovery.  I

21   don't want full-blown discovery.  But we need that disclosure

22   letter in order to get into the facts case by case, fact by

23   fact circumstances to explain why the 106 preemption is not

24   appropriate.

25        And I had asked opposing counsel -- I sent a letter a

1    few days ago saying please get me a response as to whether you

2    would voluntarily produce it without me having to ask the Court

3    for extraordinary emergency limited discovery, jurisdiction in

4    nature, so as to get the disclosure letter.

5           And to be clear, I can send that to Your Honor right

6    now.  I have an email set up that is the letter.  We have asked

7    for a redacted version that literally only asks for four or

8    five targeted portions of the disclosure letter along with the

9    greetings and the salutations and the signature.

10          But, generally, these are the key representations of

11   what IP Bensch and those other sellers said they owned and had

12   as part of this assignment.  Because the IP traded hands in

13   92 million and we're trying to see -- and that disclosure

14   letter, not depositions about it, not interrogatories about

15   it -- we really need it so that our response to the removal can

16   be careful and specific and can push the Court with -- you

17   know, push the matter down to the Court in an intelligent way

18   that really takes into account what representations were made.

19   Because we do think the case law says that subject matter

20   jurisdiction almost -- yes, it is on the pleadings.  But it is

21   really case-specific, fact-specific.  And we have got to look

22   to, of course, the labels.

23          Conversion and unjust enrichment -- I will concede

24   what the Court was saying.  Those labels, of course, give rise

25   to it.  Of course, there is case law that has those exact

1    labels being preempted.

2         What it hinges on is the conduct and facts and

3    gravamen of the claim.  And we believe that hinges on in large

4    part that disclosure letter.

5         So we are broaching that, asking that counsel would

6    address it in some way that would either give it to us.  I can

7    shoot you the email.  With the Court's permission, I could hit

8    send and it would be a "reply all" so that Your Honor could

9    right now see the letter.  It is a one-page letter that spells

10   out the position.

11        THE COURT:  Well, let me hear first from opposing

12   counsel.

13        MS. HYLAND:  Your Honor, I don't expect that it is

14   going to be a problem to give them that disclosure letter.  The

15   holdup is nothing more than my client is a publicly traded

16   company with significant internal hierarchy.

17        And when we are talking about turning over nonpublic

18   documents that relate to an acquisition of a publicly traded

19   company, there is a significant amount of approvals that need

20   to occur.

21        So I am not trying to stonewall Mr. Norris on that

22   issue.  It is just a very sensitive document that is not

23   publicly available.  And my hope is that we could come to the

24   Court with a joint protective order -- a motion for a joint

25   protective order and get that entered and that I would be able

1    to produce that document to him.

2         But at this point, I am still trying to get approval

3    from my client.  And I don't fully appreciate all the

4    complexities of, you know, SEC requirements and things like

5    that that are touching on this issue.  But I don't -- I am not

6    aware at this moment of any specific objection to providing the

7    document to him.

8         MR. NORRIS:  And I thank you for that, Ms. Hyland,

9    and also I have -- like in my letter, I specifically said we

10   are agreeable to a confidentiality agreement or an appropriate

11   protective order if it needs the level of a court protection.

12   And maybe we could just agree to hammer that out in the next

13   couple of days and present that to the Court without waiving

14   our jurisdictional issues, of course.

15        I mean, it is sort of topological and circular.  I

16   have got to get the consent order from a Court that I'm

17   challenging subject matter jurisdiction on.  But I need this

18   document.  And if they need the protective order in order for

19   me to get the document, as long as everybody agrees that is not

20   going to be used as a waiver of subject matter, I'm happy to do

21   that and work with Ms. Hyland.

22        We just need to see that disclosure letter.  It

23   really -- there are scenarios in which -- and I'll just say

24   this.  We don't think it likely because of the posture of the

25   arguments that have been made for the last year.

1    There are some areas in which that disclosure letter

2    could significantly change and possibly decrease the lawsuit

3    and change -- change a whole host of issues.  And we just need

4    to put our eyes on it.  And we have never been able to see it

5    for a year.

6        So I appreciate Ms. Hyland.  And I would love to work

7    towards that.  But since we have to respond by February 7 to

8    the removal, that is only three weeks.  So --

9        THE COURT:  Well, why don't you extend the time to

10   the February date?  I have told you I can't get to this til

11   April, first of all.

12       Why don't you-all give yourself automatically -- why

13   don't you prepare a schedule that is -- or I'll grant the

14   extension now for the response to be ten days later because it

15   still is going -- it will still all be briefed by the end of

16   March then.

17       MR. NORRIS:  That is fine with me, Your Honor.  I

18   just did not want to be the party asking for any extensions

19   because I have told the Court that I would not be asking for

20   extensions.

21       MS. HYLAND:  We have no objection to that, Your

22   Honor.  And I also would concede in whatever way I can on this

23   phone call that we would not take the entry of a protective

24   order as any kind of waiver of subject matter jurisdiction.

25   And I would think if it makes it any easier, you know, I don't

1   know -- you know, if we entered it in perhaps the dec. action

2   instead of the removal action, I don't know if that helps at

3   all.  But we would not use that as some sort of tactic to

4   challenge the issue.

5          THE COURT:  All right.

6          MR. NORRIS:  I'll take that representation as

7   sufficient.  I have no --

8          THE COURT:  Well, basically we can enter an extension

9   for you in this case and indicate that the parties agree

10   that -- I don't have to even say anything about the protective

11   order at this point.  You can enter the protective order

12   separately in the other case.

13          MR. NORRIS:  Okay.

14          THE COURT:  You can refer to the minutes at any point

15   if there is a problem.  I mean, not just the minutes, but the

16   transcript of the proceeding.

17          MR. NORRIS:  Yes.  Thank you, Your Honor.

18          So you are saying the ten-day extension -- are we

19   planning to present a proposed order with all these dates or

20   just a generic ten-day extension of our answer to the motion to

21   remand, whenever that -- you know, taking it from 2/7 to 2/17?

22          THE COURT:  Right.  We'll just -- Mr. Martin can just

23   enter an extension with no more fanfare than that as to that.

24          MR. NORRIS:  Thank you.

25          THE COURT:  But then you-all need to just keep your

1  eyes on me.  What I really want is that it be ready by

2  April 1st -- not that we're going to pick it up necessarily

3  April 1st.  But everything is filed so that we can really get

4  to it in a reasonable time in the next -- the following six

5  weeks.

6              Okay?

7              MR. NORRIS:  Yes, Your Honor.

8              THE COURT:  And I'm just going to ask my law clerk:

9  Gavin, do you have anything else you want clarified for

10 purposes of --

11             LAW CLERK:  Not at this time, Your Honor.

12             THE COURT:  All right.  All right.  Sounds like a

13 plan.

14             Good luck in resolving the whole issue about the

15 document and the protective order.

16             If there is a problem, let me know and we'll get on

17 the phone.  Okay?

18             MR. NORRIS:  Thank you, Your Honor.

19             MS. HYLAND:  Thank you so much, Your Honor.

20             THE COURT:  Thank you.  Be well and be safe.  All

21 right?

22             MS. HYLAND:  You as well.

23             THE COURT:  Thank you.  Bye-bye.

24                 **(The proceedings were thereby concluded at**

25                 **11:22 A.M.)**

```
 1                    C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA

 4   NORTHERN DISTRICT OF GEORGIA

 5

 6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

 7   the United States District Court, for the Northern District of

 8   Georgia, Atlanta Division, do hereby certify that the foregoing

 9   30 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12        In testimony whereof, I hereunto set my hand on this, the

13   7th day of February, 2022.

14

15

16

17        _____
          SHANNON R. WELCH, RMR, CRR
18        OFFICIAL COURT REPORTER
          UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT